# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOSE PIZANO, on behalf of himself and other similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 15-cv-11190 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| BIG TOP & PARTY RENTALS, LLC d/b/a/ BIG TOP TENT & PARTY RENTALS, LLC, and MARLENE LEONARD, individually, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

On December 7, 2016, the parties agreed to brief the threshold question of whether "ride time" can be compensable time for purposes of calculating overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, as amended, and the Illinois Minimum Wage Law, 820 ILSC 105/1, *et seq*. Based on those submissions [42, 47, 48], the Court concludes that "ride time" can be compensable. This case is set for further status on May 4, 2017, at 9:30 a.m. to discuss scheduling, additional motion practice, and the possibility of settlement.

**I.  Background**

Defendant Big Top & Party Rentals, LLC, and its owner, Defendant Marlene Leonard, "provide[] tents, tables, chairs, lighting, staging, dance floors, and other equipment to clients for events such as weddings and festivals" in Illinois, Wisconsin, and Indiana. [42, at 2; 47, at 2.] Plaintiff Jose Pizano was one of Defendants' regular seasonal employees, working from May to October each year from 2012 through 2015. [47, at 2.] According to Plaintiff, he and other employees would "go to Defendants' worksite each day, load Defendants' trucks with the

necessary tents, and other supplies for the day, and travel to the clients' sites to install the tents as well as any other requested equipment." [42, at 2.]

Plaintiff alleges that he regularly worked in excess of forty hours a week, but was not paid overtime compensation for all of this time. [1, ¶¶ 10–11.] Specifically, he was not compensated for work that includes "time loading trucks at the beginning of the day, unloading trucks and the end of the day, and traveling from job to job and installing tents." [42, at 2.] He alleges that he and other workers would "punch in each day before beginning to load Defendant's trucks and punched out at the end of each day after unloading the truck and cleaning off tools." *Id.* at 2–3.

Defendants dispute these facts (and, obviously, any liability). They argue that Defendants had three crews, two of which travel to various sites in Illinois, Wisconsin, and Indiana, while the third remains at Defendants' warehouse. [47, at 3.] According to Defendants, the third crew has exclusive responsibility for loading and unloading the trucks. *Id.* The other two crews are given a "ride" to the first morning job site in a fully loaded company truck, and they start their work day only upon arrival at the job site. *Id.* During their truck ride, "almost all of the crew" make personal phone calls, sleep, or snack. *Id.* at 4. "The employees perform no work whatsoever prior to and after their 'ride' to and from the first and last job site." *Id.* Nevertheless, Defendants pay these workers at their regular rate for this "ride time." *Id.* at 1, 3.

**II.     Analysis**

The parties requested to brief a narrow issue: whether, as a matter of law, ride time can be compensable under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, as amended

("FLSA"), and the Illinois Minimum Wage Law, 820 ILSC 105/1, *et seq.* ("IMWL").[1] The answer to that narrow question is yes.

"The FLSA requires employers to pay overtime to certain employees who work more than 40 hours in a work week." *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 173 (7th Cir. 2011). In 1947, Congress amended the FLSA through the Portal-to-Portal Act to eliminate liability under the FLSA for employers' "activities which are preliminary to or postliminary to [the] principal activity or activities [that an employee is hired to perform], which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal [activities]." 29 U.S.C. § 254(a). Department of Labor regulations explain, however, that this amendment "did not alter what is known as the 'continuous workday rule,' under which compensable time comprises 'the period between the commencement and completion on the same workday of an employee's principal activity or activities * * * [,] whether or not the employee engages in work throughout all of that period." *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 875 (2014) (quoting 12 Fed. Reg. 7658 (1947); 29 CFR § 790.6(b) (2013)).

"[A]ctivities performed either before or after the regular work shift, on or off the production line, are compensable under the [FLSA] if those activities are an integral and indispensable part of the principal activities." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956). "An activity is * * * integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the

---

[1] "Courts have generally held that the IMWL parallels the FLSA, and the Illinois Administrative Code provides that FLSA regulations provide guidance in interpreting the IMWL. Thus, the same analysis generally applies to both the FLSA and IMWL." *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2004 WL 1882449, at *4 (N.D. Ill. Aug. 18, 2004) (internal citations omitted).

3

employee cannot dispense if he is to perform his principal activities." *Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513, 517 (2014).

Other Department of Labor regulations speak directly to whether travel time is compensable. See 29 C.F.R. § 785.38. In particular, Section 785.38 provides that

> Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice. If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., all of the time is working time. However, if the employee goes home instead of returning to his employer's premises, the travel after 8 p.m. is home-to-work travel and is not hours worked.

*Id.*

Likewise, courts have explained that "[p]reparation or cleanup constitutes principal activity if it is an integral part of the employee's work" and thus the worker's "travel time to a job site after preparation or from a job site before cleanup would be time covered by the statutes." *O'Brien v. Encotech Const.*, 2004 WL 609798, at *4 (N.D. Ill. Mar. 23, 2004); accord *Guzman v. Laredo Sys., Inc.*, 2012 WL 5197792, at *4 (N.D. Ill. Oct. 19, 2012) (granting summary for plaintiffs on FLSA claim where the undisputed facts showed that "before traveling to the jobsite, the plaintiffs were required to gather together the tools they would need based on the assignment they received"). Moreover, "time spent traveling from jobsite to jobsite" is "integral and indispensable" to a principal activity, and therefore compensable under the FLSA. *Perez v. Super Maid, LLC*, 55 F. Supp. 3d 1065, 1079 (N.D. Ill. 2014) (finding that paying a "predetermined amount for each cleaning job regardless of * * * the time spent traveling to that job" violated the FLSA). "However, travel time is not covered by the statutes if the employee

4

did not perform any preparation before traveling to the job site or if the employee did not perform any cleanup after leaving the job site." *Ladegaard*, 2004 WL 1882449, at *3.

Defendants do not discuss, distinguish, or dispute any of these regulations or this case law. Their brief cites a single case, *Integrity Staffing*, which does not concern travel time at all.[2] Relying on *Integrity Staffing*, Defendants merely assert that "ride time" is a "convenience" to the employees and not an "integral part of the crew's job." [47, at 5.] But that sentiment misses the point. Under Department of Labor regulations, if Plaintiff was "required to report at [Defendants' yard] to receive instructions" about, for example, setting up the party-related equipment at a jobsite, "perform other work" at this meeting spot (such as loading or unloading a truck with equipment), or "pick up and to carry tools" related to installing the tents, then "the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice." 29 C.F.R. § 785.38; *O'Brien*, 2004 WL 609798, at *5 (holding that "[l]oading of additional supplies and equipment" were principal activities, and thus subsequent travel time to the job site was compensable). The fact that employees are not building tents or cleaning tools while they are driven around in Defendants' trucks is irrelevant. Under the "continuous workday rule," time is compensable "between the commencement and completion" of the same workday "*whether or not the employee engages in*

---

[2] *Integrity Staffing* involved whether the time that warehouse employees spent undergoing a security screening at the end of the day constituted non-compensable postliminary activities. The Supreme Court held that it did because the employer "did not employ its workers to undergo security screenings, but to retrieve products from warehouse shelves and package those products for shipment to Amazon customers." 135 S. Ct. at 518. The Supreme Court also held that the security screenings were not "integral and indispensable" to the employees' duties as warehouse workers because "[t]he screenings were not an intrinsic element of retrieving products from warehouse shelves or packaging them for shipment" and could have be eliminated "without impairing the employees' ability to complete their work." *Id.* For purposes of this motion, Defendants do not argue that the loading or unloading of their trucks with tools or equipment necessary for installing their party-related tents and accessories are not "integral and indispensable" to their principal activities (setting aside whether the evidence will ultimately show that Plaintiff and other similarly situated employees actually performed these activities).

*work throughout all of that period.*" *Sandifer*, 134 S. Ct. at 875 (internal citations and quotation marks omitted). "If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., *all of the time is working time*." 29 C.F.R. § 785.38 (emphasis added). And Defendants do not contest that the employees who actually drove trucks between job sites, like Plaintiff, were working the entire drive. Thus, "ride time" can be compensable under the FLSA and IMWL as part of an employee's continuous workday.

The Court cannot decide more than that. The parties plainly dispute whether Plaintiff (or other similarly situated employees) ever loaded Defendants' trucks with tools or equipment before heading to a jobsite or whether they unloaded the truck and cleaned up after returning from a jobsite. That is a factual issue bearing directly on Defendants' ultimate liability, and cannot be resolved before discovery has even started. Assuming that Plaintiff establishes that he performed such tasks and that these tasks are integral and indispensable to Defendants' principal activity, the travel time from Defendants' yard to the jobsite, and between jobsites, are part of the day's work and must be counted as hours that Plaintiff worked under the FLSA and IMWL.

**IV. Conclusion**

For the foregoing reasons, the Court concludes that "ride time" can be compensable under the FLSA and IMWL. This case is set for further status on May 4, 2017, at 9:30 a.m. to discuss scheduling, additional motion practice, and the possibility of settlement.

Dated: April 12, 2017

                                                Robert M. Dow, Jr.
                                                United States District Judge