# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSE PIZANO, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. 15-cv-11190 |
| v. | ) |
| | ) Judge Robert M. Dow, Jr. |
| BIG TOP PARTY RENTALS, LLC d/b/a | ) |
| BIG TOP TENT & PARTY RENTALS, | ) |
| LLC, and MARLENE LEONARD | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's motion [56] for an order to authorize notice to similarly situated persons pursuant to 29 U.S.C. § 216(b). For the reasons set forth below, the motion [56] is granted in part and denied in part. Defendants are ordered to submit the names and addresses of all employees who between December 11, 2012 and present have been subjected to Defendants' policy of classifying any or all hours worked in excess of 40 hours as "ride time." Defendants are ordered to provide this information to Plaintiff by June 11, 2018. This case is set for further status hearing on June 21, 2018 at 9 a.m.

**I.  Background**

Defendant Big Top & Party Rentals, LLC, and its owner, Defendant Marlene Leonard, "provide[] tents, tables, chairs, lighting, staging, dance floors, and other equipment to clients for events such as weddings and festivals" in Illinois, Wisconsin, and Indiana. [42, at 2; 47, at 2.]. Plaintiff Jose Pizano was one of Defendants' regular seasonal employees, working from May to October each year from 2012 through 2015. [47, at 2.] According to Plaintiff, he and other employees would "go to Defendants' worksite each day, load Defendants' trucks with the

necessary tents, and other supplies for the day, and travel to the clients' sites to install the tents as well as any other requested equipment." [42, at 2.]

Plaintiff alleges that he regularly worked in excess of forty hours a week, but was not paid overtime compensation for all of this time. [1, ¶¶ 10–11.] Specifically, he was not compensated for work that includes "time loading trucks at the beginning of the day, unloading trucks and the end of the day, and traveling from job to job and installing tents." [42, at 2.] He alleges that he and other workers would "punch in each day before beginning to load Defendant's trucks and punched out at the end of each day after unloading the truck and cleaning off tools." *Id*. at 2-3.

Defendants dispute these facts (and, obviously, any liability). They argue that Defendants had three crews, two of which travel to various sites in Illinois, Wisconsin, and Indiana, while the third remains at Defendants' warehouse. [47, at 3.] According to Defendants, the third crew has exclusive responsibility for loading and unloading the trucks. *Id*. The other two crews are given a "ride" to the first morning job site in a fully loaded company truck, and they start their work day only upon arrival at the job site. *Id*. During their truck ride, "almost all of the crew" make personal phone calls, sleep, or snack. *Id*. at 4. "The employees perform no work whatsoever prior to and after their 'ride' to and from the first and last job site." *Id*. Nevertheless, Defendants pay these workers at their regular rate for this "ride time." *Id*. at 1, 3

On April 12, 2017, the Court ruled that , as a matter of law, ride time could be compensable under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., as amended ("FLSA"), and the Illinois Minimum Wage Law, 820 ILSC 105/1, et seq. ("IMWL"). [50.] On October 22, 2017, Plaintiff filed a motion [56] to authorize notice to similarly persons pursuant to 29 U.S.C. § 216(b), which is currently pending before the Court.

**II.     Legal Standard**

Pursuant to the FLSA, "employees are entitled to overtime pay (*i.e.*, one and one-half times the regular rate) for any hours worked in excess of forty hours per week, unless they come within one of the various exemptions set forth in the Act." *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir. 2012) (citing 29 U.S.C. §§ 207, 213). Section 216(b) of the FLSA "gives employees the right to bring their FLSA claims through a 'collective action' on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chi.*, 605 F.3d 445, 448 (7th Cir. 2010) (citing 29 U.S.C. § 216(b) (2006)); see *Schaefer v. Walker Bros. Enterprises*, 829 F.3d 551, 553 (7th Cir. 2016) ("Suits under the Fair Labor Standards Act cannot proceed as class actions. Instead they are opt-in representative actions."). District courts have broad discretion in managing collective actions under the FLSA. *Alvarez*, 605 F.3d at 449.

"The conditional approval process is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011). "Neither Congress nor the Seventh Circuit has specified the procedure courts should use to decide FLSA certification and notice issues, but collective FLSA actions in this district generally proceed under a two-step process." *Grosscup v. KPW Mgmt., Inc.*, 2017 WL 2461538, at *1 (N.D. Ill. June 7, 2017) (citations and quotations omitted).

This case is at step one, the conditional certification stage. "The purpose of conditional certification is to determine the size and contour of the group of employees who may become collective members and whether these potential members are 'similarly situated.'" *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 848 (N.D. Ill. 2017) (citing 7B Charles A. Wright et al., Federal

Prac. & Proc. § 1807); see also *Gomez v. PNC Bank, Nat'l Assoc.*, 306 F.R.D. 156, 173 (N.D. Ill. 2014); *Ervin*, 632 F.3d at 974 ("The conditional approval process is [ ] used by district courts to establish whether potential plaintiffs * * * should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action.").

"At this first stage, the plaintiffs have the burden of showing that other potential claimants are similarly situated by making a 'modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Nicks*, 265 F. Supp. 3d at 849 (citations omitted). "Courts use a 'lenient interpretation' of the term 'similarly situated' in deciding whether plaintiffs meet this burden." *Grosscup*, 2017 WL 2461538, at *1 (quoting *Salmans v. Byron Udell & Assocs., Inc.*, 2013 WL 707992, at *2 (N.D. Ill. Feb. 26, 2013)). To satisfy the modest factual showing for issuing notice pursuant to § 216(b), a plaintiff "must provide some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a common policy that violated the law." *Pieksma v. Bridgeview Bank Mortg. Co.*, LLC, 2016 WL 7409909, at *1 (N.D. Ill. Dec. 22, 2016) (internal quotations omitted). However, conditional certification is not automatic and to proceed as a collective action, a plaintiff must "demonstrate similarity among the situations of each plaintiff beyond simply claiming that the FLSA has been violated; an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws generally must be present." *Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 WL 1043429, at *2 (N.D. Ill. Mar. 16, 2016) (citations omitted). If a plaintiff is able to show that other potential plaintiffs are similarly situated, courts may conditionally certify the case as a collective action and allow the plaintiff to send notice of the case

to similarly situated employees who may then opt in as plaintiffs. *Grosscup*, 2017 WL 2461538, at *1; *Salmans*, 2013 WL 707992, at *2.

At this initial stage, "[t]he court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant." *Bergman*, 949 F. Supp. 2d at 855-56 (citation omitted); see also *Larsen v. Clearchoice Mobility, Inc.*, 2011 WL 3047484, at *1 (N.D. Ill. July 25, 2011) ("[T]he court does not resolve factual disputes or decide substantive issues going to the merits."); *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F.Supp.2d 745, 751 (N.D. Ill. 2011) ("[T]he court does not consider the merits of a plaintiff's claims, or witness credibility").

The second step, which is not at issue here, is more stringent and occurs after the opt-in and discovery process has been completed. *Nicks*, 265 F. Supp. 3d at 849. "Once the court has determined which employees will be part of the collective action, the court must reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis. If the court finds insufficient similarities during the second step, it may revoke conditional certification or divide the class into subclasses." *Id.* (quotations and citations omitted).

## III. Analysis

### A. Conditional Certification

Defendants contend that the Court should not allow for any notice to be issued. Defendants recognize that "Plaintiff need only make a reasonable factual showing that members of the proposed collective action are similarly situated," but argue that the Court should deny Plaintiff's request to issue a notice in this case because the requisite factual showing is typically supported by discovery but discovery has not taken place in this case "due to the de minimus [sic]

value of Plaintiff's claim[.]" [61, at 7.] This contention is puzzling, as the Court has not limited discovery in this case due to the claimed *de minimus* value of Plaintiff's claim. In fact, some discovery has taken place. Defendants have produced payroll records indicating that Defendants categorized any time that Plaintiff worked over 80 hours, but under 100 hours, as "ride time," which was paid at the regular rate. [65-1;65-2.] Defendants also produced redacted payroll records of other employees indicating that other employees were subject to the same method of categorizing hours. [65-3.] Indeed, Defendants have indicated that nine other employees were compensated for "ride time" in a similar manner as Plaintiff was compensated. [61, at 5.] This satisfies Plaintiff's burden of a making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.[1] Accordingly, Plaintiff is permitted to send notice to similarly situated persons pursuant to 29 U.S.C. § 216(b).

### B. Form and Content of Notice

#### i. *Time Period*

Plaintiff asks that the notice be sent to all persons employed by Defendants since December 11, 2012. The three year-time frame identified stems from the statute of limitations for claims brought under the FLSA. Specifically, the FLSA requires that an action "be commenced within two years after the cause of action accrued," unless the violation was willful, in which case the statute of limitations is three years. 29 U.S.C. § 255(a). However, an FLSA lawsuit is "commenced":

---

[1] Defendants also ask that the Court consider denying Plaintiff's motion for an order to authorize notice to similarly situated persons pursuant because of "the de minimus [sic] value of Plaintiff's claim, the questionable breach alleged by the Plaintiff and the length of time that has passed since the original filing of this action." *Id*. at 6 (citing *Dominguez v. Don Pedro Rest.*, 2007 WL 271567, at *4 (N.D. Ill. Jan. 25, 2007)). These considerations are not relevant to the Court's conditional certification analysis. *Dominguez v. Don Pedro Restaurant*—the only case relied upon by Defendants in making this argument—did not address the considerations raised by Defendants. 2007 WL 271567, at *4. In fact, in that case, the court in that case granted the plaintiff's § 216(b) motion. *Id*. at 5.

on the date when the complaint is filed; except that in the case of a collective or class action * * * it shall be considered to be commenced in the case of any individual claimant—(a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or (b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256 (emphasis added). Thus, even though Plaintiff brought this collective action on behalf of all others similarly situated, the statute of limitations for these potential plaintiffs continues to run until those individuals opt in (*i.e.*, give their consent in writing to become parties in this action, per 29 U.S.C. § 216(b)). See *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771–72 (7th Cir. 2013) (comparing requirement that FLSA collective action plaintiffs must opt in to action with procedure of opting out of class actions governed by Fed. R. Civ. P. 23)).

In Plaintiff's reply, Plaintiff argues for the first time that the Court should "toll the limitations period for potential opt-ins and allow the § 216(b) notices to relate back to the period of three years prior to Plaintiff's filing his lawsuit" (*i.e.* December 11, 2012) because Defendants' failed to post the notice required by 29 C.F.R. § 516.4.[2] In support of this argument, Plaintiff submits an affidavit representing that throughout his employment with Defendants, he never saw a poster or sign on the federal minimum wage or other overtime provisions anywhere on Defendants' premises. [67-3, at ¶ 16.]

---

[2] Plaintiff also argues that the Court can apply equitable tolling in this case because Defendants have engaged in dilatory tactics. It is true that some courts have applied equitable tolling to collective action claims brought under the FLSA when the defendant refused to provide contact information for potential collective action members. See, *e.g., Harrison v. DelGuerico's Wrecking & Salvage, Inc.*, 305 F.R.D. 85, 90 (E.D. Pa. 2015); *Adams v. Inter-Con Sec. Sys.*, 242 F.R.D. 530, 543 (N.D. Ca. 2007). Plaintiff cites discovery disputes between the parties discussed in court to argue that the Defendant here similarly refused to provide contact information for potential collective action members. While these transcripts show that Defendants delayed producing materials requested by Plaintiff, they also show that Plaintiff was seeking discovery aimed at establishing numerosity, not discovery aimed at identifying potential collective class members. Specifically, at the May 4, 2017 hearing before this Court, Plaintiff's counsel stated, "We're happy at this point–just for now, at least to the numerosity issue, to accept the names of the putative class members, redacted[.]" [67-2, at 9.] Given that Plaintiff agreed to accept redacted documents, Plaintiff cannot now fault Defendants for failing to produce contact information for potential plaintiffs. Regardless, the Court cannot toll the statute of limitations for parties not currently before it. *Soto v. Wings 'R US Romeoville, Inc.*, 2016 WL 4701444, at *11 (N.D. Ill. Sept. 8, 2016).

The Seventh Circuit has concluded that the failure to post the notice required by the Age Discrimination in Employment Act of 1967 ("ADEA") would provide a sufficient basis for tolling the statute of limitations on an ADEA claim. *Kephart v. Inst. of Gas Tech.*, 581 F.2d 1287, 1289 (7th Cir. 1978). The Seventh Circuit reasoned that "Congress imposed [the notice] requirement on employers to insure that protected employees would be fully informed of their rights under the ADEA" and that "this end would not be realized if employers were free to breach the posting requirement without penalty." *Id*. Thus, courts in this district have concluded that the failure to post the required notice under the FLSA can justify the equitable tolling of the statute of limitations. See, *e.g., Young Chul Kim v. Capital Dental Tech. Lab., Inc.*, 279 F. Supp. 3d 765, 772 (N.D. Ill. 2017) (denying motion for summary judgment on statute of limitation grounds where there was a factual dispute as to whether the defendant posted the required notice, which would justifying tolling the statute of limitations for plaintiffs who opted-in after the statute of limitations on their claims expired); *Chavez v. Don Stoltzner Mason Contractor, Inc.*, 2010 WL 1417029, at *5 (N.D. Ill. Apr. 5, 2010) (denying motion to dismiss on statute of limitations ground where plaintiffs alleged that defendants failed to pose the required FLSA notice). The Court agrees that an employer's failure to comply with the notice requirements of 29 C.F.R. § 516.4 could serve as a basis for equitably tolling the statute of limitations on the claims of potential plaintiffs.

Still, the Court cannot toll the statute of limitations for parties not currently before the Court. *Soto v. Wings 'R US Romeoville, Inc.*, 2016 WL 4701444, at *11 (N.D. Ill. Sept. 8, 2016). Plaintiff's request to toll the statute of limitations for all potential plaintiffs who were employed by Defendants since December 11, 2012 therefore is denied. The Court will consider, however, any arguments raised by any individual potential plaintiff regarding the application of equitable tolling

based on his or her particular circumstances. Given that individuals who were employed by Defendants since December 11, 2012 may be able to invoke equitable tolling based on his or her particular circumstances, the Court is inclined to be overinclusive with respect to who receives the § 216(b) notice.

The Court issued an order giving the parties the opportunity to address whether it is appropriate to allow notices to be sent to persons whose claims would be time barred absent the application of equitable tolling. [See 71.] The Court indicated that it anticipated allowing Plaintiff to send notices to persons employed by Defendants since December 11, 2012, but requiring that the section of the notice titled "Why did I get this Notice?" be revised to state:

> You got this Notice because the Company identified you as an employee that worked for the Company during the time period potentially covered by this lawsuit. Receiving this notice does not mean that the time period for bringing your specific claims has not ended.

*Id*. Plaintiff filed a response, indicating that he had no objection to the Court's anticipated approach. [See 72.] Defendants filed a response arguing that the Court should not allow Plaintiff to send notices to employees working for Defendants since December 11, 2012, arguing that Plaintiff has not established (1) extraordinary circumstances justifying equitable tolling or (2) due diligence on the part of potential plaintiffs whose claims would be time-barred absent the application of equitable tolling. [See 74.] Defendants do not contest Plaintiff's representation that they did not post the required FLSA notice. In fact, Defendants completely fail to address Plaintiff's argument that their failure to post the required FLSA notice tolls the statute of limitations for any potential plaintiff who acted with due diligence. Defendants also fail to address whether it is appropriate to send notices to potential plaintiffs whose claims are viable only if the statute of limitations on their claims are equitably tolled.

9

As discussed above, potential plaintiffs may be able to invoke equitable tolling as a result of Defendants' failure to post the required FLSA notice. The fact that some potential plaintiffs may need to invoke equitable tolling to defeat Defendants' statute of limitations argument does not negate the fact that they are similarly situated to Plaintiff (*i.e.* victims of a common policy or plan that violated the law). *Cisneros v. Jinny Beauty Supply Co.*, 2004 WL 524482, at *1 (N.D. Ill. Feb. 6, 2004) (rejecting defendants' argument that plaintiff was not "'similarly situated' to plaintiffs who would invoke equitable tolling"). Plaintiff therefore is permitted to send notice to all employees who between December 11, 2012 and present have been subjected to Defendants' policy of classifying any or all hours worked in excess of 40 hours as "ride time."[3]

### ii. *Transmittal of Notice*

Plaintiff asks for authorization to transmit the approved § 216(b) notice (1) by first class U.S. Mail, using an envelope containing the language "Important: Court-Ordered Notice. Please Read Immediately[,]" (2) in employee pay envelopes, and (3) in a posting at Defendants' office. Plaintiff contends that all three methods of transmittal are necessary, and notes that the Supreme Court has made clear that efficient administration of a collective action requires "accurate and timely notice concerning the pendency of the action, so that [the potential Plaintiff] can make informed decisions about whether to participate." [65, at 8 (quoting *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).]

Defendants argue that Plaintiff's proposed methods of transmittal of the notice are prejudicial because they are duplicative and aimed at harassing Defendants' employees. Defendants therefore ask that if the Court approves the issuance of a notice, that the notice be

---

[3] The Court does not see any basis for allowing Plaintiff to send notice to all employees of Defendants, as Plaintiff has not established that all employees are "similarly situated" to Plaintiff for the purposes of § 216(b).

transmitted "via first class [U.S. Mail] with no particular form of envelope or, alternatively, a simple posting at the workplace in a conspicuous location for a short period of time." [61, at 11.]

Given the purpose of a § 216(b) notices, it is appropriate to send § 216(b) notices using different methods of delivery. See, *e.g., Black v. P.F. Chang's China Bistro, Inc.*, 2017 WL 2080408, at *12 (N.D. Ill. May 15, 2017) (allowing for transmittal via regular mail and email and permitting plaintiffs to send a reminder to potential plaintiffs halfway through the notice period). Accordingly, the Court approves Plaintiff's proposed methods of transmitting the § 216(b) notices, with one caveat. The language Plaintiff proposes be included on the envelopes might be interpreted as judicial sponsorship of the contents of the notice. In *Woods v. New York Life Insurance Company*, the Seventh Circuit held that § 216(b) notices should not go out on court letterhead. 686 F.2d 578, 581 (7th Cir. 1982). The Court reasoned:

> [W]e think it improper for the district court to direct that the notice go out on its letterhead, over the signature of the clerk of court or other judicial officer. We can think of no good reason for apparent judicial sponsorship of the notice, at a stage in the litigation when there has been no determination that the plaintiff's allegations have any merit; and we can think of a good reason against it, which is that the judicial imprimatur is likely to be misunderstood as a representation that the suit probably has merit.

*Id*. Even though the notice disclaims that the Court has taken a position on the case's merits, the language "court-ordered notice" indicates that the notice is being sent at the direction of the Court, not merely with the authorization of the Court. If Plaintiff wishes to include alternative language, the parties are directed to meet and confer regarding other possible language that would indicate that the contents of the envelope are important, but that would not indicate that the Court has taken a position on the merits of the case.

### iii. Other Challenges

Defendants also make a number of miscellaneous objections to Plaintiff's notice. First, Defendants argue that the notice should be limited to one page, eight point font. [66, at 1.] Defendants argue that Plaintiff's proposed notice "is more akin to a contract than a notice." Plaintiff's proposed notice is only three pages long (six pages long if you include both the English and the Spanish versions). This does not seem excessive. This Court previously has approved notices of similar length. [See, e.g., Black v. P.F. Chang's China Bistro, Inc., Case No. 16-cv-03958 (N.D. Ill.), Dkt. 37-1, at 3-5.] The Court sees no reason for concluding that the length or font size of Plaintiff's proposed notice here is inappropriate.

Second, Defendants argue that the notice should be in English only. *Id*. at 2. Defendants fail to explain why it is improper to issue the notice in both English and Spanish. Plaintiff contends that the notice should be issued in both English and Spanish because Defendants employ some individuals—like Plaintiff—who speak only Spanish. Given that the purpose of the notice is to make potential plaintiffs aware of the lawsuit so they have the opportunity to opt-in, Plaintiff may issue the proposed notice in both English and Spanish. See *Jimenez v. GLK Foods LLC*, 2013 WL 3936928 (E.D. Wis. July 30, 2013); *Harris v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 564, 583 (D. Minn. 2014).

Third, Defendants challenge the portion of Plaintiff's proposed notice that states:

> YOUR IMMIGRATION STATUS WILL NOT AFFECT YOUR RIGHT TO RECOVER OWED BACK OVERTIME WAGES.

[65-4, at 4-9.] There is nothing misleading or otherwise improper about this statement. The FSLA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Although the Seventh Circuit has not addressed the issue, most courts have concluded that undocumented workers fall within the broad definition of "employee" in the FLSA and therefore

are entitled to the protections of the FSLA. See, *e.g., Nieves v. OPA, Inc.*, 948 F. Supp. 2d 887, 892 (N.D. Ill. 2013) ("While the Seventh Circuit has not addressed the issue, other courts in this district and elsewhere have uniformly found that the immigration status of a party is not a line of inquiry that is reasonably calculated to lead to the discovery of admissible evidence in action brought for unpaid wages under the FLSA because undocumented workers are not exempted from the definition of "employee" in the FLSA." (collecting cases)). Given that undocumented workers are entitled to protections under the FLSA, the immigration status of any employees that opt-in to the lawsuit is irrelevant and not discoverable in claims under the FLSA. *Villareal v. El Chile, Inc.*, 266 F.R.D. 207, 214 (N.D. Ill. 2010) ("[A] number of courts have recognized that allowing discovery of a plaintiff's immigration status would have an *in terrorem* effect likely to deter FLSA claims."). Undocumented workers might forego their rights under the FLSA under the mistaken belief that that their immigration status is relevant. Thus, Plaintiff may notify potential plaintiffs that their right to recover is not dependent on their immigration status, as other courts in this district have done. [See, *e.g., Torres v. Nation One Landscaping, Inc.*, No. 12-cv-9723, Dkt. 56-15.]

Defendants also object to the statement regarding immigration status appearing on every page in red text. The most recent notice filed by Plaintiff used black text for the challenged immigration status statement, not the red text that Defendants found objectionable. [See 73.] Defendants' objection to the color of the text therefore is moot. Defendants do not explain why including the disclaimer on each page of the notice is problematic. Absent reasonable objections to the notice, Plaintiff "should be allowed to use the language of their choice in drafting the notice." *Kelly v. Bank of Am., N.A.*, 2011 WL 7718421 (N.D. Ill. Sept. 23, 2011) (quoting *King v. ITT Continental Baking Co.*, 1986 WL 2628, at *3 (N.D. Ill. Feb. 18, 1986)).

Fourth, Defendants argue that there should be no reference to contacting attorney Christopher Williams in the notice as the notice is not an advertisement for legal services. *Id.* at 3. This information is regularly included in notices under the FSLA to allow potential plaintiffs to contact the attorneys on the case with any questions. [See, *e.g., Black v. P.F. Chang's China Bistro, Inc.*, No. 16-cv-3958, Dkt. 37-1; Dkt. 38.] Including this information is helpful to the Court, because it makes it less likely that potential plaintiffs will contact the Court with questions about the case. Furthermore, Plaintiff's proposed notice makes clear that any potential plaintiffs may choose to hire their own counsel.

Fifth, Defendants argue that the proposed notice should include all the risks of joining the lawsuit, such as the possibility that the company may wish to pursue claims against persons who opt-in to the lawsuit for overpayment. *Id.* Specifically, Defendants ask that the Court include the following language in the § 216(b) disclaimer:

> However, if the plaintiff and employees who join this lawsuit lose the lawsuit on the claims that apply to you, you will not receive money and you will be bound by the result of the lawsuit WHICH MIGHT ALSO INCLUDE A CLAIM FOR MONEY DAMAGES AGAINST YOU. Also, if you join this lawsuit, there is a possibility that you will BE SUED BY THE COMPANY FOR OVERPAYMENT OF WAGES.

[66-2.] Plaintiff contends that "Defendants' proposed language should be seen as nothing more than retaliatory and an attempt to dissuade potential collective members from joining." [67, at 14.] The Court agrees. The FLSA prohibits any employer from discharging or discriminating against an employee in any manner for participating in a claim brought under the FSLA. 29 U.S.C. § 215(a)(3). Defendants' proposed language indicates that participation in the lawsuit would make it more likely that the company would bring a claim against the employee. It is clearly aimed at deterring employees from participating in the lawsuit, and therefore is improper. See *Black v. P.F. Chang's China Bistro, Inc.*, 2017 WL 2080408, at *11 (N.D. Ill. May 15, 2017)

(rejecting argument that a notice under § 216(b) had to include notice to potential plaintiffs that they could be required to pay a portion of defendant's costs if they were not successful, and citing to case discussing the chilling effect of including such language)[4]; see also *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 740 (1983) ("[B]y suing an employee who files charges with the Board or engages in other protected activities, an employer can place its employees on notice that anyone who engages in such conduct is subjecting himself to the possibility of a burdensome lawsuit.").

Sixth, Plaintiff's proposed 60-day notice period is reasonable. Defendants assert that 60-days "is too much time." [66, at 3.] But Plaintiff does not expand upon this assertion in any manner. *Id.* The Court sees nothing unreasonable about the application of a 60-day notice period proposed by Plaintiff, which this Court has used in other FLSA cases. [See, *e.g., Black v. P.F. Chang's China Bistro, Inc.*, 2017 WL 2080408, at *12 (N.D. Ill. May 15, 2017).]

Finally, with respect to the notice of consent, Defendants provide alternative language for both the title of the notice and the body of the notice. [61, at 8-9.] Defendants contend that their "proposed notice is more appropriate because it conditions the [opt-in] on being similarly situated and it also contains a time period" that the Court has already deemed relevant (*i.e.* January 1, 2015 to the present). As discussed above, the Court rejects Defendants' argument regarding the relevant time period. However, the Court agrees that Plaintiff's proposed notice of consent should be modified to limit those who can opt in to the lawsuit to employees who were subject to Defendants "ride time" policy. Thus, the notice of consent included with Plaintiff's notice should be revised as follows:

> By my signature below I represent to the court that I have worked for Big Top Tent & Party Rentals, LLC, performing tent construction and event staging, between

---

[4] Although Defendants do not specifically raise the possible liability for attorney's fees in the body of their response, their proposed notice references possible liability for attorney's fees. [66-2, at ¶ 10.]

15

December 11, 2012 and the present and I was not paid for all earned overtime wages for hours classified by my employer as "ride time" during certain weeks where I worked in excess of forty (40) hours. I hereby authorize the filing and prosecution of this Fair Labor Standards Act action in my name and on my behalf and designate Jose Pizano as my representative to make decisions on my behalf concerning this litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs and all other matters pertaining to this lawsuit.

The inclusion of the phrase "for hours classified by my employer as 'ride time'" should address Defendants' concern about limiting opt-in plaintiffs to those who are similarly situated as Plaintiff. The Court will not further change the language chosen by Plaintiff absent reasonable objections. *Kelly v. Bank of Am., N.A.*, 2011 WL 7718421 (N.D. Ill. Sept. 23, 2011) (Absent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice." (quoting *King v. ITT Continental Baking Co.*, 1986 WL 2628, at *3 (N.D. Ill. Feb. 18, 1986)). "The Court has both the power and the duty to ensure that the notice is fair and accurate, [but] that power should not be used to alter plaintiffs' proposed notice unless such alteration is necessary." *Heitmann v. City of Chicago*, 2004 WL 1718420, at *3 (N.D. Ill. July 30, 2004) (quoting *King*, 1986 WL 2628, at *3).

### III. Conclusion

For the foregoing reasons, the motion [56] is granted in part and denied in part. Defendants are ordered to submit the names and addresses of all employees who between December 11, 2012 and present have been subjected to Defendants' policy of classifying any or all hours worked in excess of 40 hours as ride time. Defendants are ordered to provide this information to Plaintiff by June 11, 2018. This case is set for further status hearing on June 21, 2018 at 9:00 a.m.

Dated: May 14, 2018  
_____  
Robert M. Dow, Jr.  
United States District Judge